lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THOMAS A. POWER,                        )
                                        )
              Plaintiff,                )
                                        )
      v.                                )          Case No. 05-2546-JAR
                                        )
KOSS CONSTRUCTION COMPANY,              )
INC.,                                   )
                                        )
              Defendant.                )
_____)

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Thomas A. Power filed suit claiming that his former employer, Koss

Construction Company, Inc. ("Koss"), terminated his employment in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Pending before the

Court is defendant's Motion for Summary Judgment (Doc. 34).  For the reasons explained in

detail below, the Court grants defendant's motion.

I.      **Uncontroverted Facts**

Koss is primarily in the business of building highways and airport runways.  It has three

divisions: the Asphalt Division, the Kansas (Sunflower) Division, and the Oklahoma (Sooner)

division.  Each Division is headed by a Project Manager.  Plaintiff worked solely in Koss's

Kansas Division.

Plaintiff became employed by Koss in 1998.  Tim Gerhardt, who was then the Project

Manager of the Kansas Division, recommended plaintiff to Don Beuerlein, who was then the

company President.  Plaintiff was hired into the position of Assistant Project Manager of the Kansas Division, where he was directly supervised by Gerhardt.  In 1998, Gerhardt was promoted to company Engineer and moved into the home office.  At the same time, plaintiff was promoted to Project Manager for the Kansas Division.  Gerhardt did not directly supervise plaintiff while he was the company Engineer.  In 2000, Gerhardt assumed the duties of Area Manager of Concrete Paving Operations and again directly supervised plaintiff up to the date plaintiff was terminated.

In his position as Project Manager, plaintiff oversaw the construction of many of Koss's major road construction projects.  Gross revenue on these projects ranged up to $30,000,000. All of the projects managed by plaintiff between 2000 and 2004 were profitable.  During his tenure with Koss, plaintiff received various employee commendations, promotions, pay raises, bonuses and stock options.

In 2001, Doyle Love, a Paving Foreman who had been employed by Koss for over 25 years, advised Gerhardt that he intended to quit his job if he had to continue working for plaintiff. Love testified he found plaintiff to be abusive to Koss employees who worked for him, constantly criticizing them, talking about them behind their backs, and showing them no respect. Rather than lose Love, Gerhardt transferred him to the Oklahoma Division.  Love continued to work for Koss until he retired in 2005.

In 2002, Tom Rodgers, a Truck Foreman who had been employed by Koss for over 15 years, advised Gerhardt he intended to quit his job if he had to continue working for plaintiff. Rodgers testified that he found that plaintiff mistreated the Koss employees who worked for him, calling them derogatory names and showing them no respect.  Beuerlein and Gerhardt convinced

2

Rodgers to stay on for the rest of the year, then transferred him to the Oklahoma Division where he remains employed as a Truck Foreman.

Bill Berry, a Grading Foreman, and Don Pitts, a Maintenance Foreman, testified that they quit their jobs with Koss because they no longer wanted to work for plaintiff. Both men reapplied for employment after plaintiff was terminated and both were rehired by Koss.

As early as June 1999, Gerhardt counseled plaintiff that he had spoken directly to many of the supervisors that worked in the Kansas Division and they did not like the way they were treated by plaintiff. The supervisors felt plaintiff's treatment was degrading, causing mistrust and resentment. Gerhardt suggested plaintiff change his ways, but plaintiff gave no indication he intended to do so. Gerhardt kept notes of this conversation with plaintiff.

In December 2003, Gerhardt talked with plaintiff regarding the poor quality of work being produced by the Kansas Division that plaintiff was supervising. Gerhardt asked plaintiff if replacing the paving machine would solve issues with pavement quality; plaintiff said it could help, but was no guarantee. Gerhardt told plaintiff that he believed the poor quality of the work was a result of the supervisors and employees who worked for plaintiff feeling that he mistreated them and were thus unmotivated. Gerhardt testified that plaintiff did not appear to accept what he had told him. Gerhardt ended the meeting by telling plaintiff that he had to find a way to improve the motivation and attitude of the people working for him. Gerhardt kept notes of the conversation with plaintiff.

In May 2004, Gerhardt again talked to plaintiff regarding Gerhardt's concern that the Kansas Division had fewer supervisors than needed and that at least two supervisors were "disgruntled" because of the way plaintiff treated them and other Koss employees. After

discussing several situations with plaintiff, Gerhardt concluded that plaintiff continued to use humiliation and anger to motivate the supervisors that he managed.  Gerhardt advised that there were better methods to motivate and plaintiff needed "to realize that people are what get things done."  Gerhardt testified that plaintiff did not seem to accept what he was saying.  Gerhardt again kept notes of the conversation.

Ultimately, Gerhardt concluded that plaintiff's way of treating the people who worked with him would not change.  Gerhardt also felt that the decline in quality of the work done by the Kansas Division was, in large part, the result of the loss of good employees and the demoralization of employees due to the way plaintiff treated them.  In late 2004, Gerhardt recommended to Vice President David Howard that plaintiff be terminated.  Gerhardt told Howard that he did not believe plaintiff could improve the quality problems in the Kansas Division because plaintiff was not willing to change the way he treated the employees who worked for him.

In late 2004, after consultation with Gerhardt, Howard decided to terminate plaintiff and advised Beuerlein that he intended to do so as soon as Howard became President of Koss on January 1, 2005.  Beuerlein agreed with the decision to terminate plaintiff, and Howard terminated plaintiff on November 5, 2005.  At the time of termination, Howard advised plaintiff that he had tremendous respect for plaintiff's "can do" attitude and his understanding of the impact of production on costs, but that, in his opinion, plaintiff's inability to develop and retain successful supervisors and the poor quality of some of the Kansas Division's work exceeded the value plaintiff brought to Koss.  At the time of his termination, plaintiff was 46 years old; he was

replaced by Robert Kennedy, age 35.[1]

Howard believed that plaintiff was a poor leader, that he did not have the respect of the people who worked for him, that the Kansas Division was performing poor quality work, and that plaintiff was not taking direction.  In addition to discussions with Gerhardt, Howard had first hand experience with the quality problems with the Kansas Division under plaintiff's supervision.  Howard had determined that the quality of the work of the Kansas Division had declined in the few years preceding plaintiff's termination to the point that it did not meet Koss's expectations.  For example, in 2004, Beuerlein advised Howard that the Executive Director of the Missouri/Kansas Chapter of the ACPA (American Concrete Pavers Association) contacted Beuerlein indicating that he was concerned that the concrete paving work of the Kansas Division had deteriorated to the point that it could cause damage to the market share of the concrete pavers and that owners might choose to use materials other than concrete for paving projects.  Koss also received numerous communications from project owners regarding the poor workmanship of the Kansas Division.

On December 12, 2002, Beuerlein sent plaintiff a letter thanking him for his part in helping Koss achieve record profits.  The letter concluded by stating, "The future success of this company depends on the leadership provided by our young managers.  I am confident you will meet that challenge as well."

In 2004, Beuerlein announced his retirement as President and CEO, effective January 1,

---

[1]Plaintiff proffers that on the date he was terminated, he was the oldest project manager at Koss and he was the only project manager over the age of 40.  Plaintiff cites to defendant's response to plaintiff's Interrogatory No. 17, attached as Appendix 6 to plaintiff's reply.  That Interrogatory, however, relates to projects that plaintiff was assigned to for the last five years of his employment.  The Court has reviewed plaintiff's other appendices as well; none of them relate to his assertion.  Thus, plaintiff's assertion is not supported by the record.  D. Kan. R. 56.1(b)(2).

2005, and announced that his successor would be Howard, who was age 38 at the time.  Shortly before his retirement, Beuerlein published a "final message" in the company's official newsletter in which he wrote, "[my successor] will lead a hand picked, young, experienced and capable management team. . . ."  When asked why he used the adjective "young," Beuerlein testified that "[Koss] had been around a long time and we were going to be around a long time more.  And so that's why I used that word, we have people in place to carry this company forward for the next generation."  Beuerlein confirmed that it was one of his goals as CEO "to put those people in place," and that he felt he had accomplished that goal.

Since becoming President of Koss on January 1, 2005, Howard has hired three management level employees over the age of 40.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251–52.

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

## III.   Discussion

As a threshold matter, the Court addresses plaintiff's suggestion that a "mixed-motive" analysis may be appropriate in this case.  This mixed-motive analysis applies only in cases where the decision "was the product of a mixture of legitimate and illegitimate motives,"[11] and therefore does not implicate the burden-shifting analysis described in *McDonnell Douglas*. Instead, the employer's burden under *Price Waterhouse* is properly deemed an affirmative

---

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[8]*Id.*

[9]*Id.*

[10]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]*Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989).

defense to the plaintiff's showing that defendant relied in part on discriminatory criteria to terminate his employment.[12]  In *Desert Palace, Inc. v. Costa*,[13] the Supreme Court clarified that a plaintiff was not required to present direct evidence of discrimination, but could proceed on a mixed-motive theory with only circumstantial evidence.

In this case, plaintiff has not brought a claim based on a mixed-motive theory.[14]  Instead, this is a disparate treatment claim that, as stated in the Pretrial Order, requires plaintiff to show that defendant's decision to terminate his employment was based on plaintiff's age.[15]  Although plaintiff contends that he can prove age discrimination by both direct and circumstantial evidence, the mixed-motive analysis is not mentioned anywhere in the Pretrial Order.[16]  The Pretrial Order "measures the dimensions of the lawsuit, both in the trial court and on appeal."[17]  Absent any motion to amend or modify the Pretrial Order, plaintiff cannot include a mixed-motive claim in this action.  In any event, as discussed below, the Court determines that plaintiff has failed to present either direct or circumstantial evidence that age played a motivating factor in defendant's decision to terminate plaintiff, making such an analysis both unnecessary and inappropriate.[18]

---

[12]*Id*. at 246.

[13]539 U.S. 90, 101 (2003).

[14](Pretrial Order, Doc. 32.)

[15]*Id*. at 5-6 (listing the elements of plaintiff's ADEA claim for wrongful termination).

[16]*Id*.

[17]*Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) (quotation omitted).

[18]*See Fox v. Wichita State Univ.*, 489 F. Supp. 2d 1216, 1227, n.32 (D. Kan. 2007) (citing *Burnett v. Southwestern Bell Tele., L.P.*, 471 F. Supp. 2d 1121, 1139 (D. Kan. 2007) (finding that circumstantial evidence did not show that retaliatory motive played a motivating part in terminating plaintiff's employment)).

Plaintiff contends that defendant terminated his employment because of his age, not as a result of his inadequate job performance.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[19]  To prevail on his ADEA claim, plaintiff must establish that age was a determining factor in the employer's challenged decision.[20]  Plaintiff need not show that age was the sole reason, but he must show that age "made the difference" in any adverse employment action.[21]  Plaintiff may meet this burden by direct evidence of age discrimination or by the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[22]

## A.    Direct Evidence of Discrimination

Plaintiff may demonstrate defendant's discriminatory motive, and therefore defeat summary judgment, by presenting direct evidence of defendant's discriminatory intent.[23]  When a plaintiff is able to provide direct evidence that age played a motivating part in the adverse employment decision, a defendant may avoid liability only on a showing, by a preponderance of the evidence, that it would have made the same employment decision absent the discriminatory motive.[24]  Both the burden of production and the risk of nonpersuasion are shifted to the

---

[19]29 U.S.C. § 623(a)(1).

[20]*Green v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (citing *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988)).

[21]*Id.* (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988)).

[22]411 U.S. 792, 802-05 (1973).

[23]*Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).

[24]*Cox v. U.S.D. 255*, 428 F. Supp. 2d 1171, 1177 (D. Kan. 2006) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)).

9

defendant.[25]  Plaintiff asserts that he has direct evidence of age discrimination, specifically, (1) the December 2002 letter from CEO Beuerlein to plaintiff stating the future success of Koss depends on the leadership of its "young managers," and expressing his confidence that plaintiff would meet this challenge; and (2) a statement made by Beuerlein in the Koss newsletter allegedly evincing a policy designed to create a "young management team."

Direct evidence requires evidence that, if believed, suffices to prove the fact of discriminatory animus without inference, presumption, or resort to other evidence.[26] Alternatively, direct evidence of discrimination may consist of "an existing policy which itself constitutes discrimination,"[27] or "oral or written statements on the part of a defendant showing a discriminatory motivation."[28]  Statements expressing a personal opinion, "even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination."[29]  Instead, by offering such statements, the plaintiff asks the fact-finder to infer that, because the defendant harbors personal opinions, the defendant acted with discriminatory intent toward the plaintiff.[30] Consequently, the court may consider statements reflecting personal opinions only when determining if there is "circumstantial or indirect evidence of discrimination against the

---

[25]*Id.*

[26]*Id.* at 1176 (citing *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204 (10th Cir. 1999), *overruled in part on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *EEOC v. Wiltel, Inc.*, 81 F.3d 1508 (10th Cir. 1996)).

[27]*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

[28]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

[29]*Shorter*, 188 F.3d at 1207.

[30]*Mitchell v. City of Wichita, Kansas*, 140 Fed. App'x 767, 778 (10th Cir. 2005) (citing *Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993)).

plaintiff."[31]

The Court concludes that the statements proffered by plaintiff do not constitute direct evidence of age discrimination.  "Proof by direct evidence requires evidence that the actual motive behind the [challenged employment action] was discriminatory animus.  Evidence demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process."[32]  In his 2002 letter to plaintiff thanking him for his part in a successful year, Beuerlein stated that the future depends on the leadership of "young managers."  Similarly, in 2004, Beuerlein wrote in the Koss newsletter that "[Howard] will lead a hand picked young, experienced and capable management team that I am confident will carry this company to new successes. . . ."  These statements are ambiguous and require an inference or presumption that Beuerlein, who was retirement age, was referring to managers under the age of 40.[33]  Even if the Court were to presume that Beuerlein's statement referred to younger workers under the age of 40, plaintiff has presented no direct evidence that the actual motive behind his termination was age discrimination.  He has not suggested that age-related remarks were made in relation to the decisional process involved in his termination.  Instead, it appears that Beuerlein's comments are the kind of "stray remarks" the Tenth Circuit has found

---

[31]*Stone*, 210 F.3d at 1136.

[32]*McCrary v. Aurora Public Schools*, 57 Fed. App'x 362, 267 (10th Cir. 2003) (citation and quotation omitted).

[33]Although any ambiguity is generally resolved in plaintiff's favor on summary judgment, the fact that an ambiguity exists necessarily means that an inference must be drawn from the statement, which prevents the statement from being used as direct evidence of discrimination.  *See Shorter*, 188 F.3d at 1207 (direct evidence must prove discrimination without any inference).

insufficient to establish direct evidence.[34]  Nor do any of the statements made by Beuerlein during his deposition make any reference to plaintiff's age or that he should be terminated because of his age.

Moreover, although Beuerlein agreed with Howard's decision to terminate plaintiff, he was not the decisionmaker—Howard was.  The record indicates that Beuerlein simply agreed after Howard had made the decision to terminate plaintiff, based on the recommendation of Gerhardt and Howard's personal observations and beliefs.  Plaintiff attributes no age-related comments to Howard who, since becoming President of Koss, has hired three management employees older than plaintiff.  Nor does plaintiff point to any age-related comments by Gerhardt, who recommended to Howard that plaintiff be terminated.  Although Beuerlein was in his final months as President at the time of plaintiff's termination, statements made by decisionmakers not involved in the decisional process normally are insufficient, standing alone, to establish age discrimination.[35]  Although Beuerlein's statements may have some circumstantial or indirect evidentiary value to plaintiff's case, it does not provide direct evidence of age discrimination.[36]

## B.    Indirect Evidence of Discrimination

Although plaintiff has produced no direct evidence of age discrimination, he may also prove his case through the indirect burden-shifting analysis of *McDonnell Douglas*.  Under

---

[34]*See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (holding comments such as "need[s] some new young blood" and "long-term employees have a diminished return" insufficient to demonstrate discriminatory motivation of employer).

[35]*Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc.*, 425 F.3d 67, 81 (1st Cir. 2005) (citation omitted).

[36]*See Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500-01 (11th Cir. 1991).

*McDonnell Douglas*, plaintiff initially bears the burden of production to establish a prima facie case of discrimination.[37]  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.[38]  If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief."[39]

Evidence of pretext may take a variety of forms.  Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."[40]  Typically, a plaintiff demonstrates pretext with evidence that (1) defendant's stated reason for the adverse action was false; (2) defendant acted contrary to written company policy prescribing the action to be taken by defendant under the circumstances; or (3) defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse decision.[41]

### Prima Facie Case

Generally, to establish a prima facie case of age discrimination in termination, plaintiff must show that (1) he was a member of the protected work group, over the age of 40; (2) he was

---

[37]411 U.S. 792,  802 (1973).

[38]*Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1533 (10th Cir. 1995).

[39]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[40]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[41]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

doing satisfactory work; (3) he suffered an adverse employment action; and (4) defendant filled his position with a younger person.[42]  Here, defendant concedes for purposes of this motion that plaintiff has satisfied the elements of his prima facie case.[43]

### Legitimate Nondiscriminatory Reason

Defendant has come forward with evidence that plaintiff's performance as Project Manager for the Kansas Division was unsatisfactory.  Howard, who made the decision to terminate plaintiff, did so upon the recommendation of Gerhardt and upon Howard's belief that plaintiff did not have the respect of the people who worked for him, had not developed and retained successful managers, had allowed the work of the Kansas Division to deteriorate to unacceptable levels, and refused to take directions from Gerhardt.  Gerhardt recommended to Howard that plaintiff be terminated because he concluded that plaintiff would not stop mistreating the people who worked for him and that the loss of and demoralization of employees was, in large part, the cause of the decline in the quality of work done by the Kansas Division. Prior to making this recommendation, Gerhardt had counseled plaintiff at least three times regarding the perception of the supervisors working for him that plaintiff mistreated them. Gerhardt had several managers advise him that they would quit if they had to continue working with plaintiff, and other employees complained of treatment by plaintiff.

---

[42]*See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).  With respect to the fourth element, the Supreme Court has held that plaintiff need not show that defendant replaced him with an employee outside the protected class, *i.e.* under 40 years old.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  Rather, to create an inference of age discrimination with respect to the fourth element, plaintiff must show a significant age difference between him and the worker who replaced him.  *Id.* at 313.

[43](Doc. 35 at 16) (citing *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992) (suggesting that when poor job performance is the proffered reason for termination, it is better analyzed in the second and third *McDonnell Douglas* stages and not at the prima facie stage)).

Plaintiff does not dispute that inadequate job performance is a legitimate nondiscriminatory reason for terminating an employee for purposes of the *McDonnell Douglas* burden-shifting framework.  Thus, the Court turns to the question of pretext.

### Pretext

In determining whether defendant's stated reason is pretextual, the Court examines the facts as they appeared to Howard, the person who made the decision to terminate plaintiff's employment.[44]  In addition, the Tenth Circuit has recognized that "a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual."[45]  Consequently, in evaluating the legitimacy of an employer's proffered reason for terminating an employee, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[46]  As the Tenth Circuit has explained, "[t]he reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."[47]

Plaintiff submits that defendant's proffered reason for terminating his employment was pretextual because his projects were profitable for the company, because he was rewarded with bonuses and salary increases, and because any declines in quality could be attributed to other

---

[44]*See Kendrick*, 220 F.3d at 1231 ("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate the plaintiff.").

[45]*Id.* (quotation omitted).

[46]*Rivera*, 365 F.3d at 924-25 (quotation omitted); *see also Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (stating that "the relevant 'falsity' inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later proved to be untrue.").

[47]*Young*, 468 F.3d at 1250 (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003)).

things, such as an inadequate paving machine. Plaintiff points to evidence that the costs associated with any quality issues were minimal compared to the revenue received for the jobs in the Kansas Division. Plaintiff asserts that Gerhardt and other managers disliked him because he was trying to introduce new cost-effective paving methods. And, as discussed above, Beuerlein's statements about "young managers" and his goal to install a "young" management team, although not direct evidence, may also be considered circumstantial evidence of pretext.

      "Age-related comments referring directly to the worker may support an inference of age discrimination."[48] To indirectly establish pretext through such statements, plaintiff must show some nexus between the discriminatory statements and the employment decision.[49] Although isolated comments that are unrelated to the challenged action do not show discriminatory animus by themselves, the necessary causal nexus may be shown if the allegedly discriminatory comments were directed at the plaintiff.[50] In this case, Beuerlein's statement in the newsletter was not made directly to plaintiff and does not bear the necessary nexus to plaintiff's termination. Indeed, the only comment directed at plaintiff was made two years prior to the termination as part of a letter thanking him for his part in Koss's profitable year and expressed Beuerlein's confidence that plaintiff could succeed. Moreover, the record does not contain any evidence attributing age-related statements to Howard or Gerhardt. Accordingly, Beuerlein's statement does not support plaintiff's claim of pretext.

      Nor does plaintiff's other evidence support his claim of pretext. Despite plaintiff's assertion that his performance was satisfactory, "'[i]t is the manager's perception of the

---

[48]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[49]*Walker v. Faith Techs., Inc.*, 344 F. Supp. 2d 1261, 1277 (D. Kan. 2004).

[50]*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (citing *Cone*, 14 F.3d at 531-32).

employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.'"[51]  Plaintiff makes no real attempt to show that Howard did not believe the reasons he articulated for plaintiff's termination.  Plaintiff has not pointed to evidence that raises a genuine factual issue about Howard's good faith belief that plaintiff's management style was at the expense of work quality and employee morale.[52]  Moreover, satisfactory performance in some areas "does not tend to show the falsity of the [employer's] proffered reasons" of deficient performance in other areas.[53]  Accordingly, plaintiff has failed to produce evidence on which a reasonable jury could find that defendant discriminated against him on the basis of age. Defendant's motion for summary judgment is granted.

    **IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 34) is GRANTED.

    IT IS SO ORDERED.

    Dated this 6<u>th</u> day of August 2007.

                                          S/ Julie A. Robinson
                                         Julie A. Robinson
                                         United States District Judge

---

[51]*Valdivia v. Univ. of Kan. Med. Ctr.*, 24 F. Supp. 2d 1169, 1175 (D. Kan. 1998) (quoting *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir. 1996)).

[52]*See Oglesby v. Hy-Vee, Inc.*, Case No. 05-3489, 2007 WL 241284, at *6 (10th Cir. Jan. 30, 2007) (noting that the fact that the decisionmaker relied on circumstantial evidence does not establish a lack of good faith).

[53]*Wallace v. Beech Aircraft Corp.*, 87 F. Supp. 2d 1138, 1150 (D. Kan. 2000) (quotation omitted).